BEYER, APPELLEE, *v.* BEYER, APPELLANT.

(No. 38043—Decided May 3, 1979.)

*Mr. Joseph O. Coy,* for appellee.
*Mr. Bernard H. Niehaus,* for appellant.

PATTON, J. The plaintiff-appellee and defendant-appellant were divorced in 1969 after having been married over 30 years. A separation agreement, which had been agreed to by the parties prior to divorce, was incorporated into the divorce decree. The agreement required the appellee-husband to pay the appellant-wife $300 per month alimony until January 31, 1976. After January 31, 1976, alimony payments were to continue at the rate of $300 per month until October 31, 1980.[1] If, however, the husband became unable to

---

[1] These payments would terminate if the wife died or remarried or if the husband died. The payments prior to 1976 were to terminate only if the wife died (if the husband had died, the unpaid balance was to be a claim against his estate).

earn between 1976 and 1980 due to any physical or mental disability, the alimony provisions were subject to renegotiation. If no new agreement could be reached, the matter was to be submitted to a court of competent jurisdiction to redetermine the alimony award in accordance with the circumstances of the parties at that time.

The plaintiff-husband retired in 1977 due to physical incapacities upon the recommendation of his physician. He attempted to renegotiate the alimony award but was unsuccessful. He, therefore, petitioned the court below to redetermine the award.

A hearing was held on the matter before a referee in the Domestic Relations Division on March 29, 1977. The referee filed a report recommending that the alimony award be reduced to $90 per month as of March 1977. This recommendation was based upon the following findings of the referee:

(1) In the year of their divorce, plaintiff-husband earned $9,600;

(2) In the year preceding his retirement, plaintiff-husband earned $18,000;

(3) Subsequent to his retirement, the husband earned $310.20 per month in social security benefits, $153.41 per month in dividends, and $638.47 per year in interest on a note from Malish Brush Co. (i.e., $53.25 per month in interest);

(4) Defendant-wife was earning $140 gross or $112 net per week (i.e., approximately $607 gross or $485.40 net per month); and

(5) Consideration of the needs and incomes of both plaintiff and defendant. (This final consideration of needs, however, was not listed.)

Defendant timely filed objections to the referee's report. The objections were overruled, and the report was journalized as the judgment of the court on May 13, 1977.

Defendant appeals from the reduction in the alimony award, setting forth the following assignments of error:

"I. The court failed to consider all the testimony and evidence in modifying the amount of alimony the defendant was entitled to receive.

"II. The court erred in its findings as to the current income of the plaintiff at the date of the hearing and failed to consider all of the money received by the plaintiff."

These arguments will be considered together, since they involve the same issues of law and fact.

The separation agreement also provided that, as part of the property settlement, the plaintiff-husband was to retain 65 shares of the Cleveland Brush Factory, the plaintiff's own business. In 1973, plaintiff sold his interest in his business to Malish Brush Co. Plaintiff obtained a note from Malish in payment of this sale. The note provides for payment of $625 per month until 1980. Of this note, a portion represents payment on the principal obligation and a portion represents interest. The amounts attributable to each vary as the note is paid. At the time of the hearing, it was determined that the average interest per month for the remaining months was $53.20.

The transcript also shows that plaintiff receives $565 per year in the form of dividends from other stocks he owns and $637.50 per year interest on a treasury note.[2] These yield $100.20 per month income in addition to plaintiff's social security and interest on the note to Malish Brush. It is unclear how the referee in his findings arrived at a figure of "$153.41 in dividends" in addition to the social security and interest on the note.

R. C. 3105.18 directs the court in determining the amount of alimony to award a party to consider "all relevant factors, including***the relative assets and liabilities of the parties***." We agree with defendant-wife that the trial court should have *considered* the entire $625 per month received on the note from Malish Brush Co. and not just the interest thereon in determining the reduction of the alimony. Although it is true, as plaintiff-husband argues, that this sum represents the sale of an asset which was awarded to the plaintiff in the property settlement, nonetheless, this sum is an asset which may be taken into consideration in determining alimony just as any asset which the wife holds may be taken into consideration. It is of no consequence that these assets may have originated from the property settlement. The trial court, therefore, erred when it considered only the interest on the note in question and not the entire sum being received each month.[3]

---

[2] This is an average figure for the next four years. In 1977, plaintiff was to receive $740 or $750 in interest on this treasury note.

[3] It is not relevant which portion of this note constitutes "income" for tax pur-

The court, in its entry, also stated that it "considered the needs and incomes of the plaintiff and defendant" in determining its award. The record is permeated with contradictions and inconsistencies regarding the plaintiff-husband's expenses. For example, plaintiff testified that he pledged a $1,500 donation to his church for the year. Later, on cross-examination, plaintiff stated he would probably only donate approximately $720 to his church that year. Twice, plaintiff stated that his expense figures were more or less "picked out of the air."[4] For these reasons, we must remand this case to the trial court to determine with more accuracy plaintiff's expenses.

We also note that several expenses which plaintiff has claimed included expenses for his present wife. While on the one hand, the court considered these as expenses of plaintiff, it failed to take into account his present wife's salary of approximately $7,200 per year. If the trial court considers expenses of plaintiff's present wife, it must also consider her income.

The referee also found that the defendant earned an income of $140 per week gross and $112 per week net. Nowhere is this fact supported in the record.[5]

More importantly, even if the wife's current earnings are conceded,[6] they are not relevant to the reduction in the award of alimony. The separation agreement (incorporated into the divorce decree) specifically provides in Section 3(a) (entitled *Alimony*) that: "Neither part time nor full time employment by the wife shall effect [*sic*] the obligation of the husband to pay the wife's support payments under this Agreement." The parties anticipated the possibility of the wife having an income of her own and agreed that that income should not affect the alimony. Thus, it was error for the referee and the trial court to consider the defendant-wife's earnings in reducing the

poses. The note is clearly an asset and under the Revised Code should be taken into consideration in determining alimony.

[4] Apparently, plaintiff sat down the morning of the hearing with his attorney and drew up a list of expenses from his own recollection. These expenses are not substantiated in any way, and, as already noted, plaintiff even admitted at the hearing to pulling them out of thin air.

[5] We note that in her "Objections to Report of Referee," defendant states that this is the amount which she earns. However, this amount does not appear in the record before the preparing of the report of the referee, and it cannot be ascertained upon what the referee based this finding.

[6] See fn. 5, *supra.*

alimony award. *Singer* v. *Singer,* unreported, Eighth Appellate District, No. 31904, decided May 3, 1973.[7]

Finally, plaintiff argues in his answer brief that his social security should not be taken into consideration. His argument is based primarily upon the fact that social security is not subject to taxation, claims of creditors or garnishment. We find this argument unmeritorious.

Again, social security, too, is an "asset" and can properly be taken into account. Furthermore, this court has already held that social security benefits are properly a subject to consider when determining alimony. See *Brown* v. *Brown,* unreported, Eighth Appellate District, No. 31219, decided July 7, 1972, at page 4. The rationale is simply that the purpose of social security benefits is support. Therefore, these benefits are protected from claims of creditors and other outside parties. The wife, although the parties are divorced, is entitled to part of this support and is not a creditor in the sense that her claims are claims against which the benefits are protected. Thus, the husband's benefits may be considered in determining the alimony award.

We conclude that the reduction of the alimony award was not determined properly. We reverse and remand to the Common Pleas Court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STILLMAN, P. J., and JACKSON, J., concur.

---

[7] We do not address the question of whether the above result would be different if *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, were applicable. *Wolfe,* decided in 1976, is only applicable to separation agreements incorporated into divorce decrees entered after the date of decision of *Wolfe. Wolfe, supra,* at 421-22. The divorce in the instant case occurred in 1969; thus, *Wolfe* can have no effect on this issue.